## SINCLAIR REFINING CO. v. WOMACK.
### No. 1180.

Court of Civil Appeals of Texas. Eastland.
Dec. 1, 1933.

Kirby, King & Overshiner, of Abilene, for appellant.

Scarborough & Ely, of Abilene, for appellee.

HICKMAN, Chief Justice.

This suit was instituted by appellee against appellant for rents and damages. Appellee alleged that he leased to appellant two filling stations, one called the "Sinclair Station," and the other, the "Noodle Station." The action was for rents on the Sinclair Station and for damages for an alleged failure on the part of appellant to perform certain contractual obligations with reference to the Noodle Station. Appellee was unable to sustain his allegations as to damages, and no issues were submitted to the jury on that portion of his cause of action, neither were such issues requested to be submitted. The appeal, therefore, involves no questions pertaining to the Noodle Station, but only questions pertaining to appellee's right to recover rents on the Sinclair Station. Upon the answers of the jury to special issues, jugment was rendered for appellee against appellant for $240 for rents. Certain recoveries were had by appellant on its cross-action, but that portion of the judgment is not under attack. The allegations of appellee's petition, upon which he went to trial, with reference to the lease contract were as follows: "That heretofore, to-wit, on or about the 9th day of Jan. 1931, plaintiff and his wife Ella Womack as owners leased to defendant certain property located at Sinclair, Texas, being a combination filling station and residence located on 1½ acres of land in the SW corner of Sec. 32 Blk. 2 S. P. Ry. Co. Lands in Jones County, Texas, at the agreed rental of $20.00 per month for one year. That up to November 1st, 1931, defendant paid said rental to this plaintiff but since that time defendant has failed and refused to pay said rental and there is now due rentals for six months at $20.00 per month, or a total of $120.00. That said lease was taken in the name of M. B. Moore, but that in truth and in fact it was taken for the defendant, and that Moore was acting as agent for defendant, and that the lease contract was in fact with defendant. That defendant had an option to renew said lease for another year at the same price."

Following this paragraph of the petition, allegations were made in the next two succeeding paragraphs with reference to the Noodle Station, after which appears paragraph No. 5, reading as follows: "That defendant has held the possession of said building under its option during this year but if it be found that it did not exercise its option then defendant has retained the possession of both stations until this date, and that the reasonable rental value of said stations is $60.00 per month each to this time."

The first two issues submitted to the jury and the answers to such issues were as follows:

"Do you find from a preponderance of the evidence that the Sinclair Station, which lease was taken in the name of M. B. Moore, was leased by said M. B. Moore for the defendant Sinclair Refining Company? Answer 'Yes' or 'No.' Yes.

"If you have answered Question No. 1, 'Yes,' then you will answer the following question: Do you find from a preponderance of the evidence that said Moore, in leasing said station, was acting within the scope of his authority as the duly authorized agent of the defendant Sinclair Refining Company? Answer 'Yes' or 'No.' Yes."

By appropriate assignments, appellant presents that there was no evidence warranting the submission of these issues, or supporting the jury's answers thereto. Before considering these assignments it is necessary to notice a preliminary question raised by appellee.

■ It is his contention that appellant cannot now raise the question that there was no evidence that Moore was the duly authorized agent of appellant to execute the lease involved in the suit, because no verified pleading of non est factum was filed by appellant as required by article 2010, R. S. 1925. The contention cannot be sustained. Appellee in his petition did not declare upon an instrument in writing charged to have been executed by appellant, or under its authority. The petition above copied merely alleged that appellee and his wife "leased to defendant certain property." The petition does state that the lease was taken in the name of M. B. Moore, but does not at all allege that Moore signed it. Indulging every reasonable intendment in favor of the allegations, they fall short of charging appellant with having executed an instrument in writing, and just as certainly they fall short of charging that Moore executed such an instrument. The statute, by its terms, applies only to pleadings founded in whole or in part *upon an instrument in writing* "charged to have been executed by him or by his authority." Appellant was under no duty to deny under oath that it had executed an instrument in writing when appellee's petition failed to charge that it had done so either in its own name, or in the name of another. Anderson v. St. Louis, B. & M. R. Co. (Tex. Civ. App.) 156 S. W. 358.

■■ The evidence discloses that, by an instrument in writing dated January 9, 1931, executed by appellee J. W. Womack and his wife, Ella Womack, as lessors, and M. B. Moore, as lessee, the lessors leased unto the lessee the filling station in question for a term of twelve months, beginning February 1, 1931, and ending February 1, 1932, for a monthly rental of $20, payable monthly in advance. The jury found, in answer to the is-

sues above copied, that Moore leased this filling station for appellant, and that in doing so he was acting within the scope of his authority as the duly authorized agent of appellant. Appellant objected to the submission of each of these issues on the ground that there was no evidence warranting their submission, and also complained in its motion for a new trial that there was no evidence supporting the answers returned by the jury thereto. There is such close correlation between the evidence claimed to support these two different findings that we shall consider it all together. No question is presented, either by the pleadings or the evidence, as to Moore's apparent authority to bind his principal by the contract, and no issue was submitted to the jury with reference thereto. The judgment rests alone upon allegations and findings of actual authority. The burden was therefore upon appellee to prove actual authority in Moore to execute the contract and also that he leased the property for appellant. A careful examination of the statement of facts has led us to the conclusion that appellee failed to discharge this burden. Moore was not a witness. In order to make proof that Moore was an agent of appellant, appellee offered the witness C. L. Larcom. By his testimony the fact was established that Moore was "bulk agent, wholesale agent." Further testimony of this witness shows Moore's authority was as follows:

"Q. What were his duties? A. He had charge of deliveries to our Service Stations, and to any other customers that we might have had.

"Q. Did he have any authority with reference to the hiring and discharging of retail agents? A. He could check out a Retail Agent, yes.

"Q. Did he have any authority to hire them? A. Yes. That is, he didn't have the authority to hire them; didn't any of us have authority to do that. He could submit a set of papers—you have to sign up a set of employment papers, and they have to be submitted to the Fort Worth office for approval."

Later in this witness' testimony will be found the following:

"Q. And Mr. Rucker, at that time, had the authority to hire and fire retail agents? A. Yes.

"Q. Did Mr. Moore have any such authority? A. Yes.

"Q. His duties were to deliver gasoline, actually, and the Company's products to the respective retail agents? A. Yes."

It cannot be concluded, we think, that this testimony shows any authority whatever in Moore to bind appellant by a contract to lease a filling station.

■ There is testimony in the record given by the appellee himself as a witness that about a week and a half or two weeks after the lease contract between appellee and Moore was executed, Moore told appellee that the lease was taken for appellant, and the same witness testified that two or three weeks after the lease was taken, one Rucker, another agent of appellant, made a like statement to appellee. This testimony was given over the objection of appellant, but we are not here considering the assignment with regard to its admissibility, but rather the question of whether it was any evidence at all. Hearsay evidence, even if admitted without objection, is not competent evidence and will not support a verdict. We have recently had occasion to consider this question and cited many authorities supporting it in the case of U. S. Fidelity & Guaranty Co. v. W. A. Inman et al. (Tex. Civ. App.) 65 S.W.(2d) 339. Clearly this testimony was hearsay as to appellant. A declaration by an agent, not in the course of the negotiations, to which it refers and not shown to be within the scope of his authority, is not admissible against the principal. In order to render such admission competent it must have been made in connection with the discharge of the agent's duty. Southern Surety Co. v. Nalla & Co. (Tex. Com. App.) 242 S. W. 197; Standard v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 47 S. W.(2d) 443; 22 C. J. p. 379.

■ For the same reason the testimony of appellee as to Rucker's admissions were, as to appellant, but hearsay. Rucker was not the general agent of appellant. He was a kind of district sales manager, with no proven authority to make lease contracts.

■ "The declarations or admissions of another agent of the same principal are incompetent to prove the scope of authority of an agent, at least as to a past transaction; or to prove, or disprove, the fact of agency, unless it appears that the agent making the declaration was authorized to do so, or that it was made as a part of the res gestae in the performance of some duty pertaining to his agency. But declarations of a general agent may be admissible for the purpose of showing the authority of an inferior agent." 2 C. J. p. 942.

Our conclusion is that the testimony of appellee as to admissions made to him by Moore and Rucker were incompetent and therefore constituted no evidence at all.

■ It is claimed that the testimony shows that appellant paid the rent during the time that Moore occupied the premises. This contention is based upon the following testimony:

"Q. How would he (Moore) pay you off? A. Sometimes he would pay me off with gasoline.

"Q. Whose gasoline? A. Sinclair.

"Q. Did Sinclair ever ask you to pay for that gasoline any other way, other than crediting it on the rent—was there any objection

when you credited it on the rent? A. None whatever."

This falls far short, in our opinion, of being testimony that appellant paid Moore's rent. The mere fact that Moore paid appellee with Sinclair gasoline without any evidence of appellant's knowledge of that fact would not support a conclusion that appellant paid the rent.

There is one bit of testimony in the record which, on its face, might indicate that this lease was taken by Moore for appellant, but, when fully considered in the light of the entire record, amounts to no more than a scintilla of proof. That testimony consists of a statement by appellee, while on the witness stand, to the effect that, when the contract was executed between himself and Moore, same was made in duplicate and was sent in to the headquarters of appellant. Appellee's copy was mailed back to him by appellant. There is no testimony that any officer of appellant made any kind of notation upon the contract, or approved same, or wrote anything to appellee in regard thereto. It might be conjectured that the contract was sent to appellant because it was interested therein as an undisclosed principal; but, in the light of the fact hereinafter disclosed, that defendant became the sublessee under said contract, this testimony rises no higher than a mere conjecture. A scintilla of evidence is no evidence. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

Some four months after the execution of the contract between Moore and appellee, Moore sublet the premises to appellant by a written contract. At the foot of this contract was the following: "The undersigned owner of the premises hereinabove described hereby consents to the subletting of same in accordance with the above and foregoing agreement." This was signed by appellee. By the terms of this sublease, appellant obligated itself to pay rental to Moore on the basis of 1 cent per gallon on all gasoline sold from and through the station. The lease contained the further stipulation, in effect, that, should appellant default in the payment of rentals as provided therein, Moore should have the privilege of terminating the lease and repossessing the premises. It is the settled law in Texas that the contract of lease between Moore and appellant created the relation of lessor and lessee as between them, and constituted appellant the subtenant of appellee. The right reserved in the contract by Moore to repossess the premises upon default in payment of rental, rendered the transaction a subletting, and not an assignment. Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 42 L. R. A. (N. S.) 1084; Davis v. First Nat. Bank (Tex. Civ. App.) 258 S. W. 241; Null & Co. v. J. S. Garlington & Co. (Tex. Civ. App.) 242 S. W. 507; 35 C. J. p. 990. If the contract had been an assignment, appellant would have been liable to appellee for the contract rental; but, since the contract was a sublease and not an assignment, appellant cannot be held to be liable upon the original lease contract between appellee and Moore. There is no privity either of contract or of estate between a landlord and a sublessee. Davis v. Vidal, supra. By consenting to the contract between Moore and appellant, appellee thereby acknowledged in writing that appellant was his sublessee, and that Moore retained an estate in the demised premises. (As a matter of fact, Moore later assigned that estate to one Foster, but that fact has no particular bearing here.) By this suit appellee is claiming that appellant was his lessee, when, by his own agreement in writing, unimpeached in the record, he has given his consent to a transaction which obligated appellant to pay rent to Moore on a gallonage basis, and which, in fact and in law, constituted appellant his sublessee, and has acknowledged that Moore retained an estate in the demised premises. If Moore retained an estate therein, which he undoubtedly did, and if appellant became the tenant of Moore and the subtenant of appellee, which it undoubtedly did, then appellee could not maintain an action against appellant on the original contract between him and Moore. Appellant was not both a lessee and a sublessee of appellee.

What has been written above has reference only to appellee's right to recover rents from appellant on the original lease contract, and does not lead to the conclusion that judgment should be here rendered for appellant. Under the contract between appellee and Moore, the term of the lease expired on February 1, 1932. Since the appellant was a sublessee of appellee, its right to possession, as against appellee, terminated with the terms of the original lease on February 1, 1932. 16 R. C. L. p. 878, § 382. The facts show no implied agreement between appellant and appellee whereby the former would hold over under the terms of the original lease contract, but they do establish that appellant did actually use and occupy these premises for at least one month after February 1, 1932. The judgment below is predicated in part upon a holding over until November 1, 1932. The evidence would not warrant recovery for this length of time, in view of appellee's refusal to permit appellant to vacate the premises on February 28th, but appellee clearly has some character of cause of action on account of the occupation and use by appellant of the premises during the month of February.

Under the condition of the record as it comes to this court at this time, it would be our opinion that that would likely be the limit of his recovery, but the cause will be remanded generally.

Reversed and remanded.