HOLDERBAUM et ux. v. HIDALGO COUNTY WATER IMPROVEMENT DIST. NO. 2 et al. (No. 7671.)*

Court of Civil Appeals of Texas. San Antonio. June 29, 1927.

Rehearing Denied July 16, 1927.

1. Appeal and error ⬥917(1)—On general demurrer to petition, allegations thereof must be accepted as true on appeal.

When the Court of Civil Appeals reviews the sustaining of a general demurrer to plaintiffs' petition, it must accept as true the allegations of the petition that defendant negligently maintained its irrigation canal causing injury to plaintiffs' land.

2. Waters and water courses ⬥228¾—Statute does not impose liability for negligence of officers and agents of water improvement district (Rev. St. 1925, art. 7655).

Rev. St. 1925, art. 7655, providing that water improvement districts organized under articles 7622–7807, may sue and be sued, does not make them liable for the negligence of their officials and agents, but merely authorizes suits in cases where a cause of action already exists.

3. Municipal corporations ⬥745 — Political subdivisions, having purely public purposes and functions, are not liable for negligence of officers or agents.

If a political subdivision has purely public purposes and functions, it is not liable for the negligence of its officers and agents acting in the line of their duties unless such liability is provided for by statute.

4. Waters and water courses ⬥228¾—Water improvement districts are not exempt from liability for negligence of officers or agents as having public purposes and duties (Rev. St. 1925, arts. 7622–7807).

Water improvement districts, organized under Rev. St. 1925, arts. 7622–7807, are not entitled to the exemption from liability for negli-

gence of officers or agents raised by the common law as a protection to corporations having purely public purposes and performing essentially public duties; a district's primary purpose being to directly benefit the landowners within the district.

5. Eminent domain ⬥2(10)—Within prohibition against "taking," "damaging," or "destroying" private property for public use without compensating owner, water improvement district flooding land was not taking property, but damaging or destroying it.

Within the meaning of the constitutional prohibition against the "taking," "damaging," or "destroying" of private property for public use without first compensating the owner for the property so taken, damaged, or destroyed, a water improvement district negligently maintaining and operating its irrigation canal, so that water seeped through its banks and overflowed them and saturated adjoining property, was not taking property, but was damaging or destroying it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage—Damages; Destroy—Destruction; Taking (in Eminent Domain).]

6. Eminent domain ⬥74—Compensation must precede taking of private property for public use, but may follow damage or destruction.

Under constitutional prohibition against the taking, damaging, or destroying of private property for public use without first compensating the owner for the property taken, damaged, or destroyed, compensation must precede a taking of property, but may follow damage or destruction thereof.

7. Waters and water courses ⬥228¾—Water improvement district is liable for negligence of officers and agents in constructing and operating irrigation canal (Rev. St. 1925, arts. 7622–7807).

Water improvement district organized under Rev. St. 1925, arts. 7622–7807, is liable for negligent acts of its officials and agents in so constructing and operating an irrigation canal as to permit water to seep through the banks and to overflow upon adjoining property.

Appeal from District Court, Hidalgo County; Hood Boone, Judge.

Action by John Holderbaum and wife against the Hidalgo County Water Improvement District No. 2 and others. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

Edward Yarbrough, of Edinburg, for appellants.

D. F. Strickland, of Mission, and D. W. Glasscock, of Mercedes, for appellees.

SMITH, J. [1, 2] Appellee is a body corporate, organized and operating as a water improvement district under the provisions of the statutes now embraced in chapter 2, Title 128, R. S. 1925. Appellants, husband and wife, own and reside upon a farm situated

within and forming a part of the district. One of appellee's irrigation canals runs along the east and south boundaries of appellants' farm. It was alleged by appellants in the court below that appellee, through its officers and agents, so carelessly constructed the canal and so negligently maintains and operates it that water constantly seeps through its banks, and sometimes overflows them, and passes into and upon appellants' farm, whereby a part of their land is so saturated with the water that it is rendered worthless, and the crops planted thereon are destroyed; that as a result of this condition appellants have been greatly damaged. These facts must be taken as true in this appeal, which is predicated upon the action of the trial court in sustaining a controlling special exception to appellants' petition. The appeal presents the proposition, overruled by the court below, that the water improvement district is liable for the negligent acts of its officials and agents.

In determining the question involved, we must look primarily to the common law because of the absence of any statute law upon the subject, for the Legislature has not undertaken to say that water improvement districts shall be liable for the negligent acts of their officers and agents in the performance of the duties imposed upon them by the statutes creating such corporations.

It has been determined that such districts are liable for damages resulting from their failure to seasonably supply water in such quantities as those entitled thereto may reasonably demand. This liability, however, arises from a contractual obligation, which, by implication, rests upon the corporation to supply water for the irrigation of lands forming a part of the district. Barnhart v. Imp. District (Tex. Civ. App.) 278 S. W. 499. But no such relation exists by implication or otherwise between the parties in this case; the district is under no contractual obligation to so construct and maintain its canals as not to injure appellants' land. Nor is there any statute by which liability for such injury is imposed upon the district. If such liability exists, it arises from the common law as construed by the decisions of our courts.

Appellants contend that the provision of the statute (article 7655, R. S. 1925), that water improvement districts "may sue and be sued," creates the asserted liability and authorizes actions against them for damages resulting from the negligence of their officials and agents. This contention is without merit, however. That provision of the statute does not relate to or affect the liability of the district in any case; it merely authorizes suits by and against the district in cases where a cause of action exists in behalf of or against the corporation. It simply affords a remedy for the enforcement of existing rights or the redress of existing wrongs.

[3] The state is divided into many political subdivisions, such as counties, cities, towns, school districts, water improvement, levee, and drainage districts. These subdivisions are all formed for more or less public purposes, and constitute corporations, or quasi corporations—a distinction which is obscured by a flood of inconsistent judicial definitions; in some sense, each is a municipal corporation. All are created by statute. But the objects for which they are created vary both in nature and degree, and their liabilities are determined by the character of the functions they perform and the purposes for which they are created. If their purposes and functions are purely public, they are not liable, for instance, for the acts of negligence of their officers and agents when acting in the line of their official duties, unless such liability is provided for by statute.

[4] Counties, for instance, are created and function for essentially public purposes which directly affect the state as a whole. Their purposes, powers, and duties are fixed by general laws, without reference to the wishes of their inhabitants. To counties the state delegates many of its sovereign powers and imposes upon them many of the duties of the sovereign, such as the preservation of the peace and the enforcement of the laws of the state, the collection of taxes for the state, the furnishing of courthouses, jails, and like facilities for the use of the state. In these respects counties become the agencies through which the sovereign enforces its general policies which affect all the inhabitants of the state alike; they are agencies of the state through which it can most conveniently discharge the duties which it, as an organized government, assumes to every person, and by which it affects to promote the welfare of all. These objects and purposes of the counties are therefore purely and essentially public in their nature, and by virtue of that status they are exempt from liability for the negligent or tortious acts of their officers and agents in carrying out those purposes, except such liability as is expressly imposed by statute. City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517.

The cities of the state constitute another class of municipal corporations. They partake, in part, of the nature of counties, in that, for example, through their officers they aid the sovereign in the enforcement of criminal laws and in the preservation of peace, and their jails and other public facilities are used by the state. And in so far as they thus become the instruments of the state, their purposes, like those of counties, are purely and essentially of a public nature, so that in the administration of these peculiarly public functions those municipalities are exempt under the common law from liability for the negligence of their officials and agents, which

liability, to be enforced, must be expressly imposed by statute.

But when cities assume to exercise powers not essentially of a public nature, and enter upon local functions, such as the construction and maintenance of streets, sewers, waterworks and other public utilities, and even the operation of an irrigation system for the benefit of their inhabitants (City of Ysleta v. Babbitt, 8 Tex. Civ. App. 432, 28 S. W. 702), then such cities are liable under the common law for the negligent official acts of their officers and agents, and no statute is necessary to create such liability (City of Galveston v. Posnainsky, supra).

Primarily, a water improvement district is in no better position than a city is when exercising its purely local powers and duties. Its general purposes are not essentially public in their nature, but are only incidentally so; those purposes may be likened to those of a city which is operating a waterworks system, or an irrigation system, such as in the Ysleta Case. A water improvement district can do nothing, it has and furnishes no facilities, for the administration of the sovereign government. Its officers have no power or authority to exercise any of the functions of the general government, or to enforce any of the laws of the state or any of its other subdivisions, or collect taxes other than those assessed by the district. They have no more power or authority than that of the officers of a private corporation organized for like purposes. As a practical matter, the primary objects and purposes of such district are of a purely local nature, for the district is created and operated for the sole benefit of its own members, and an analysis of these objects and purposes discloses that they directly benefit only the landowners who reside within and whose lands form a part of the district, to the exclusion of all other residents therein. It is true, of course, that the state and the general public are greatly benefited by the proper operation of the district, and to that extent its objects and accomplishments are public in their nature, but this characteristic is only incidental to the primary and chief object of the corporation, which is the irrigation of lands forming a part of the district. It is obvious, then, that the purposes and duties of such districts do not come within the definition of public rights, purposes, and duties which would entitle the district to the exemption raised by the common law as a protection to corporations having a purely public purpose and performing essentially public duties.

[5,6] Appellants take the position that the action of appellee in flooding and thereby injuring and destroying the value of their land amounted to a "taking" of the land, within the contemplation of the constitutional inhibition against the taking, damaging, or destroying of private property for public use without first compensating the owner for the property so taken, damaged, or destroyed. It appears to be settled that the trespass here complained of was not a "taking" of appellants' property within the contemplation of that inhibition, but it did amount to the "damage" or "destruction" of that property as there contemplated. In either event, the effect was the same, except that in the case of a "taking" the owner must be compensated *before* the act of taking, whereas, in the case of "damage" or "destruction" the act may precede compensation. Lumber Co. v. Railway Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870. The precise point raised may be said to be moot, however, since the act condemned has already transpired. But it is plain that the act complained of comes within the condemnation of the constitutional inhibition, and that in any event appellants are entitled to compensation. Imp. Dist. v. City of Fort Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994; Lbr. Co. v. Railway, supra.

[7] In consequence of the several conclusions we have set out somewhat at random and without connected co-ordination, we hold that appellee, improvement district, cannot escape liability for the negligent or tortious acts of its officials and agents in so constructing and operating its irrigation canals as to damage or destroy appellants' property.

Appellee asserts in a cross-assignment of error that the petition of appellants, as plaintiffs in the court below, discloses, as a matter of law, that the cause of action alleged was barred by the statute of limitations, but we overrule the contention. In so deciding, we do not hold that appellee's propositions of law are without merit, in the abstract; we simply hold that when tested by demurrer the allegations in the petition do not affirmatively show the cause of action to be barred by limitation.

Because the court erred in sustaining the general demurrer to appellee's trial petition, the judgment is reversed and the cause remanded.

The original opinion in this cause will be withdrawn, and the foregoing substituted in lieu thereof.