Court of Civil Appeals of Texas. San Antonio. Jan. 9, 1929.

Rehearing Denied Feb. 6, 1929.

M. L. Dew, of Weslaco, and Neal A. Brown and J. F. Carl, both of Edinburg, for appellant.

Geo. P. Brown, of Edinburg, D. W. Glasscock, of Mercedes, and L. J. Polk, of Pharr, for appellee.

COBBS, J. Appellant sued appellee, a water irrigation company, for damages to appellant's land caused by seepage water from the canals of appellee, American Rio Grande Land & Irrigation Company, an irrigation company organized under article 5002 of the Revised Statutes of 1911, having its principal office at Mercedes, in Hidalgo county, owning its lands and maintaining a system of main canals, laterals, drainage ditches, pumping plants, etc., necessary in irrigating the lands in said county, described as West tract subdivision of the Llano Grande grant of land and other lands in said county, and for the purpose of diverting water from the Rio Grande river and transporting it through said canals and laterals to the land comprising said West tract and other tracts of land in said county, said water to be used by persons owning and farming said lands for producing various crops from year to year.

Appellant alleged that he owns the south 10 acres of farm tract No. 360, in said west tract subdivision, and that he is a water taker paying the usual price for water. Appellee alleged that appellant purchased the said land from appellee, and that there was a reservation in the deed that the grantee expressly waived all loss and damage to the lands conveyed thereby, caused by any breaks, leaks, seepage, and overflow from said company's canals, and that the company would not be or become liable in any manner therefor.

Appellant alleged that one of appellee's main irrigation canals lies on the south and west side of his said 10 acres of land; and that the canal lying south of said land is so negligently and carelessly constructed that the bottom of the canal is lower at the southeast corner of appellant's land than at points 50 yards and further from said corner; and by reason thereof, and the negligent and careless operation of said irrigation system, a large amount of water stands and remains at all times in that part of said canal which is lower than the other parts of said canal, which causes a constant seepage of water out into the lands of appellant, and that said water seepage is constantly increasing, and destroying and damaging and injuring appellant's land; and that from the negligence of said irrigation company the water has seeped out of said canal and has ruined and destroy-

ed and rendered worthless 3 acres of said land, and has partially destroyed and damaged one acre of said land, and has damaged and injured all of the remaining part of said land as to its sale and market value; and that the seepage has so injured said 3 acres of land that it will not produce crops; that this seepage first appeared in the summer of 1926; and that the negligence of appellant in permitting the water to stand in the canal in the low places is the direct and proximate cause of the injury.

On December 12, 1927, appellant sent appellee the following notice of said injury:

"December 12, 1927.

"The American Rio Grande Land & Irrigation Co., Mercedes, Texas—Gentlemen: I own the South ten acres of Farm Tract No. 360, West Tract. This land is being ruined and its value destroyed by seepage from your canal. Several acres of this land is now too wet to grow crops on and the seepage is constantly increasing.

"I am not willing to have my land destroyed no more than you would be willing to have your property destroyed. This is to notify you that unless immediate adjustment is made, I will be compelled to file suit for the damage done to my property.

"Very truly yours,
"[Signed]                    M. L. Dew."

But since such notice appellee has permitted the damage to continue, and appellant alleged further: "That prior to the time that the defendant herein, its directors, agents, servants and employees negligently permitted the seepage, damages and injuries herein complained of to be done to plaintiff's land it was well worth $400.00 per acre; and plaintiff here now alleges that the reasonable market value of same prior to and at the time of the injuries herein complained of was $400.00 per acre; and that three acres of same have been destroyed and made worthless, to plaintiff's damage in the sum of $1,-200.00; that one acre of same has been partially destroyed and damaged to plaintiff's injury in the sum of $350.00, and that the remaining six acres of said land have been so damaged on account of the land which has been directly waterlogged lying along the front and along said highway which leaves the remaining six acres so decreased in value that it is not worth more than $300.00 per acre, when prior to the damage above complained of same was well worth and was of the reasonable market value of $400.00 per acre and that the six acres plaintiff has suffered damage in the sum of $600.00; and that by reason of said negligence of said defendant plaintiff has sustained damages to all of the land in the total sum of $2,150.00."

Appellant alleged that he purchased the land in order to plant citrus fruit thereupon, but that it has been so injured that he is not able to use it therefor.

As to the negligence of appellee, appellant alleges: "That the defendant has been and is grossly negligent in this; that said defendant left a deep depression in its canals along by the side of this plaintiff's land, some two or three feet lower than the remainder of the canal, which caused water to stand along beside this plaintiff's land at all times; and if the bed of the canal had been of the same level, said hole of water would not have stood there and would, therefore, not have seeped through onto this plaintiff's land and ruined it as herein set forth; that the defendant and its agents, servants and employees well knew that said deep depression was in said canal, and that said deep hole of water stood there constantly and was ruining this plaintiff's land, but notwithstanding such knowledge on part of the defendant, its agents, servants and employees, the defendant failed and refused to remove the cause of said seepage after it so well knew it; and has used no care and diligence whatever to protect this plaintiff against said water, not even slight care and diligence, and is therefore guilty of gross negligence, by reason of the facts herein set out, and that such gross negligence is the direct and proximate cause, of the injuries herein complained of."

Appellee filed exceptions and responsive pleadings, and, upon a full hearing, the court sustained the exceptions, and the cause was dismissed.

■ The first question for us to consider in this appeal is as to the validity of the waiver of any damage caused by the seepage of water upon and over appellant's land.

Appellee pleaded the covenants in the deed, as follows:

"It is understood the company's reservoirs, canals, branch canals, laterals, and ditches, and the embankments thereof, are of earthen construction and unlined, with gates and other structures of concrete, metal, wood, and other materials, embedded in and through such embankments; and is agreed the company shall not be required to change the type or character or materials of such construction, and shall only be required to use reasonable care in the maintenance and operation thereof as now constructed. It is understood—that breaks, leaks, seepage, and overflow, will and must occur therefrom, and are and will be incident to such maintenance and operation thereof; and is agreed that the Grantee shall and does waive all loss and damage to the lands herein conveyed and any crops grown thereon caused thereby, and that the company shall not be or become liable in any manner therefor.

"And also: The water rights herein conveyed shall be appurtenant to and run with the title of the lands herein conveyed, and be transferable only with said lands. This conveyance shall inure to the benefit of, and all the terms and provisions hereof shall be binding upon, the Grantee and his or their

heirs, executors, administrators, assigns, and legal representatives."

When appellant purchased this land he knew the canals had long been constructed of earthen construction, and that seepage would occur, and that appellee would not be required to change the type, character or materials, for appellant was under no legal or moral obligation to buy the land; it was bought freely, with the canals constructed alongside of it, and he might, as a reasonable man without scientific knowledge, have known the water would seep onto the land. There is nothing in the statute that prohibits a grantor from retaining such a provision in his conveyance. There is no allegation that the canal had ever been declared a nuisance by the board of water engineers at any time prior or subsequent to the purchase by appellant.

"Against public policy" is often used as a public expression, but there is no absolute rule by which a contract may be measured to determine the issue or not. Each case must be judged by itself. We see here nothing against any public policy.

This provision violates no sacred right of contract. It is prohibited neither by the express terms, nor by any fair implication. Public policy permits the utmost freedom of contracts between parties. It is only void when it contravenes the law or a well-known public policy. Zeigler v. Illinois Trust & Savings Bank, 245 Ill. 180, 91 N. E. 1041, 28 L. R. A. (N. S.) 1112, 19 Ann. Cas. 127; St. Regis Candies, Inc., v. Hovas (Tex. Com. App.) 3 S.W.(2d) 429.

It cannot be said that, when appellee sold this land, it was acting as a public service concern; it was acting as a seller of land to a purchaser. It owned the land and had the right to sell it; appellee and the purchaser were dealing with each other, and it cannot be gainsaid that there was a public policy involved. M., K. & T. Ry. v. Carter, 95 Tex. 461, 68 S. W. 159.

It was also provided in said deed: "No claim for damages arising out of or based upon any failure or default of the company in respect to any of its duties or obligations described in clause ('b') of paragraph 'Thirteenth' hereof shall be enforceable against the company unless the Grantee shall give notice in writing of such claim and the amount thereof to the company within and no later than six months after the date of the act or default complained of or the accrual of such claim, and giving of such notice within said time shall be a condition precedent of the right to sue the company therefor."

In accepting the land ingrafted with the covenant providing for six months' notice, under his own holding and his own pleading, it was appellant's duty to give notice to appellee within six months from the summer of 1926, when the alleged injury occurred; but he did not give notice, as shown by the above notice, until December 12, 1927, one year thereafter. It was not alleged that the proof of loss had been timely given. The stipulation was a reasonable one.

In writing the opinion of the court in Bryan v. United Irrigation Co. (Tex. Civ. App.) 267 S. W. 298, Chief Justice Fly, in commenting on the case of Co-operative Vineyards Co. v. Ft. Stockton Irrigation Lands Co., said: "The case of Vineyards v. Ft. Stockton Irr. [Lands] Co. (Tex. Civ. App.) 158 S. W. 1191, merely holds that an irrigation company selling its land may provide in its deed that it shall not be liable for damages arising from seepage of water from its canals. It has nothing to do with irrigation." So it has not; it is a simple requirement which is required to be given in order that the party may adjust himself to the coming damage, for, as said in the Vineyards Case, "The right of an owner of land * * * to put such restrictions in his deed as shall not be against public policy is unquestioned in this State."

The stipulation in that case is almost identical with the stipulations here. It is apparent that the stipulation here is to make appellee liable for damage caused by seepage only in the event it is occasioned by reason of gross negligence and a failure to repair after reasonable notice.

On the question of gross negligence, see Astin v. Chicago, M. & St. P. Ry., 143 Wis. 477, 128 N. W. 265, 31 L. R. A. (N. S.) 158, in which the following language is used: "The wrong is characterized by an absence of any care on the part of a person having a duty to perform, to avoid inflicting an injury to the personal or property rights of another, by recklessly or wantonly acting or failing to act to avoid doing such injury, evincing such an utter disregard of consequences as to suggest some degree of intent to cause such injury. Various terms have been used to characterize the mental state of the wrongdoer in such a case, as rashly, recklessly, wilfully, wantonly, and even intentionally. Early it was said that such state involves such disregard of consequences as to evince little short of actual intent, that the latter and the other conditions so run together that no attempt in administration should be made to separate them as regards legal consequences of a compensatory nature."

The pleadings fail to show specific acts of gross negligence on the part of appellee in the construction or maintenance of its irrigation canals that may have caused the seepage complained of. The following cases thoroughly support the proposition announced, that such stipulations are valid and are enforceable: St. L. S. W. Ry. Co. v. Overton (Tex. Civ. App.) 178 S. W. 814; Stevens & Russell v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 178 S. W. 810; St. L., B. &

M. Ry. Co. v. Marcofich (Tex. Civ. App.) 185 S. W. 51; St. L. S. W. Ry. Co. v Seale & Jones (Tex Civ App.) 247 S. W 883; Davis v. First National Bank (Tex. Civ. App.) 245 S. W 1009; Revised Statutes 1925, art. 5546.

The Seale & Jones Case, above cited, holds that a requirement that notice be given of a claim for damages within 120 days as a condition precedent to any right of action thereunder was a reasonable stipulation and one that the courts will enforce.

Appellee having failed to stipulate against its failure to use ordinary care to prevent injury from seepage, if such seepage occurred through the failure to use ordinary care, the stipulation requiring notice to be given became effective as a condition precedent to bringing suit, so it cannot be said that the giving of such notice was a useless procedure.

On the question of damages for seepage, see opinion of this court, written by Associate Justice Smith in Holderbaum v. Hidalgo County Water Imp. Dist. No. 2 (Tex. Civ. App.) 297 S. W. 865, and affirmed in (Tex. Com. App.) 11 S.W.(2d) 506.

A careful review and a fair consideration of the issues fail to convince us that there is any error in the court's ruling.

The judgment is affirmed.